UNITED STATES LIGHT & HEATING CO. v. SAFETY CAR HEATING & LIGHTING CO.

(Circuit Court, N. D. Illinois, E. D. October 20, 1911.)

No. 29,550.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—BRUSH MECHANISM FOR DY-NAMOS.

The Bliss patent, No. 707,754, for brush mechanism for dynamos, es-pecially applicable to dynamos used for the electric lighting of railway trains and designed to provide automatically for the constant polarity of a dynamo notwithstanding reversal of direction of rotation, covers a combination of elements none of which were new, but shows improve-ments which constitute a substantial advancement on the prior art and involve patentable invention, although limited to the particular device shown. As so construed and limited, *held* not infringed.

In Equity. Suit by the United States Light & Heating Company, appearing as successor to the Bliss Electric Car Lighting Company, against the Safety Car Heating & Lighting Company. On final hear-ing. Decree for defendant.

Edwin B. H. Tower, Jr. (Jones, Addington, Ames & Seibold, of counsel), for complainant.

Duell, Warfield & Duell (Robert D. Kellogg, of counsel), for de-fendant.

KOHLSAAT, Circuit Judge. Defendant is charged with in-fringement of patent No. 707,754, granted to·W. L. Bliss August 26, 1902, for brush mechanism for dynamos. Claim 6 only is involved. It reads as follows:

"6. Brush mechanism for dynamos comprising a rotary ring, a stationary ring, a raceway intermediate of the two rings, bearing-balls located in said raceway and serving to hold the rings in rotatable relation with each other, brush-holders carried by the rotary ring and means for limiting the rotary movement of the said rotary ring, substantially as set forth."

According to defendant, this claim covers a rotary ring, a station-ary ring, a raceway intermediate the two rings, all without quali-fications or limitations, bearing-balls located in the raceway, func-tioned to hold the rings in rotatable relation with each other, brush-holders to be carried by the rotary ring, and means for limiting the rotary movement of the rotary ring.

The patent, line 8, p. 1, reads:

"My invention relates to brush ·mechanism for dynamos, with the object in view of providing automatically for the constant polarity of a dynamo in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

whichever direction it may rotate and notwithstanding changes or reversal of the direction of the rotation."

The patent has 12 claims, of which claim 6 may be termed the broadest. The device "is especially applicable to dynamos deriving motion from running gear of railway vehicles for the purpose of charging storage batteries or furnishing a direct electrical current for the illumination of such vehicles." The dynamo comprises the casing, the armature structure, including associated armature, shaft, and commutator and brush mechanism. Complainant's counsel claim a brush construction which constitutes a unitary and easily removable device. By the removal of the plate *i* in the casing, the brush-carrier may be inserted and removed. By means of a removable plate in the bottom of the casing, the brushes may be manipulated and the armature blocked in position when desirable in order to remove the hub formed in the casing from the axle pressure. "The brush-carrier," according to the specification (page 1, line 59)—

"consists of an annular rotatable inner ring *j*, upon which are secured and properly insulated therefrom the brush-holders *k*. The inner ring *j* has a semicircular groove or ball-race *l* formed in its periphery. The inner ring *j* is mounted within an outer or stationary ring *m*, having on its inner wall a semicircular groove or ball-race. The outer ring *m* may be held securely in position within the front opening in the casing *a* back of the cover *b* by permitting the outer portion of its inner face to rest against an annular flange *n*, formed around the margin of the opening in the casing, and its outer face engaged by an annular flange *o*, extending from the inner face of the cover *b*. The pressure of the cover on the outer ring may be sufficient to hold it in place, or it may be secured by means of one or more screws *p*, extending through its margin into the flange *n* of the casing."

According to complainant, the primary function of the balls in the raceway is to lock the two rings in position, although the usual benefits of a ball-bearing are incidentally secured.

With regard to the stop mechanism, it is stated in the specification (page 2, line 20) that:

"The reciprocating rotary movement of the inner ring *j*, carrying the brushes, is limited by means of a stop-pin *u*, having a screw-threaded engagement with the cover *b* and extending inwardly within a curved slot *v*, formed in the ring *j*. The length of the slot *v* is such as to permit the ring *j* to rock the required distance to shift the brushes and give the necessary lead, and in the present instance, where the machine is a four-pole machine, this distance is equal to or a little more than a quadrant."

When the armature is reversed, the rotary ring, carrying the brushes, through frictional contact of the bushes with the commutator, will be moved therewith, until intercepted by the stop-pin. This rotary movement of the brushes will cause them to exchange position with relation to the commutator, causing the polarity of the brushes to remain constant.

The reversal of the direction of the current results, in the main, from change in the running direction of the car, from whose axle the dynamo is driven. Such reversal in the running direction of the car causes a reversal of the dynamo armature, and, necessarily, a reversal of the direction of the current, unless prevented. If a reversal of direction in rotation is accompanied by a proper reversal

of the brush position, the two reversals, says complainant's expert, Miller, "will, so to speak, counteract each other, so that the current will flow from the dynamo in the same direction as before." The proper position for the brushes in a dynamo running in one direction is somewhat off of the theoretical axis of commutation; the neutral points being shifted slightly in the direction of rotation. The angle between the two points is termed the angle of lead. In making allowance for this angle of lead, it is necessary that the brushes be swung around the commutator a sufficient distance to make the substitution of position of brushes plus the angle of lead. In a four-pole device, this would be 90 ° plus a small angle. This idea is, of course, not new with complainant. Defendant denies the validity of the patent in suit, and in support of its contention cites Bliss' prior patent, No. 525,836, granted September 11, 1894, for a self-adjusting brush for dynamo-electric machines; Crompton & Swinburne patent, No. 5,168, of 1886, for improvements connected with the electric lighting of trains; Ball patent, No. 675, of 1891, for a new and improved regulator for electric generators and motors; Lake patent, No. 11,133, of 1891, for improvements relating to dynamo-electric machines and electric motors and to apparatus connected therewith; Ball patent, No. 444,487, dated January 13, 1891, for regulator for dynamo-electric machines; Wheeler patent, No. 575,918, of June 26, 1897, for brush-carrier for dynamo-electric machines; Vicarino patent, No. 662,580, of November 27, 1900, for apparatus for electrically lighting railway carriages, etc.; Pihlfeldt patent, No. 327,408, of September 29, 1885, for ball-bearing for velocipedes; and Herman patent, No. 426,271, of April 22, 1890, for fifth-wheel.

The earlier Bliss patent, No. 525,836, has the brush-carrier, commutator, and stop mechanism, arranged so as to reverse the position of the brushes. The brush-carrier is in the form of a crossbar, having an opening at its center to receive a hub or sleeve which supports the axle of the generator. This sleeve is stationary. There is no roller-bearing between the crossbar and the sleeve. The two rings— the one stationary and the other rotatable—of the patent in suit, it is claimed, serve the same purpose as the inner surface of the crossbar opening and the exterior periphery of the sleeve-bearing. Complainant concedes that the latter patent involves the principle of the former, but insists that it constitutes an improvement thereof, so as to secure superior as well as new results. These latter consist in part in the facility afforded for removing the brush-carrying ring with brush-holders attached, and for providing ready access to the brushes; this being desirable in cases where the casing is secured beneath the floor of a car or other vehicle. The new features, as compared with the device of the earlier patent, seem to consist of the casing with its removable plates, the substitution of a rotatable brush-carrier ring in lieu of a rotatable brush-carrying arm, a nonrotatable outer ring, co-operating with the inner rotatable ring instead of the axle-bearing sleeve or hub; the latter having been transferred to the casing, and being no part of the brush device, and ball-bearing and locking between the rings secured through the raceway, constructed by

grooving the inner face of the outer nonrotatable ring and the periphery of the inner rotatable ring.

Complainant insists that the use of the raceway and balls for locking the two rings together is new in the dynamo art. There is also the alleged novel adjustments of the parts, which constitute a unitary brush mechanism without which the openings in the casing would be of little value.

None of the elements are in themselves new, though complainant insists that the locking feature of the raceway and balls is not shown to have been specifically claimed in the prior art. Roller bearings are shown in the R. E. Ball British patent, No. 675, of 1891, as an antifriction device between two rings, one rotatable and one stationary, and "serving to hold the rings in rotatable relation with each other."

In the British patent to Lake, No. 11,133 of 1891, is shown a brushholder which includes in its elements a support mounted upon antifriction rollers, which travel in a cylindrical groove, forming the bearing between the arm and the journal.

Roller bearings between brush-carrying rings and a stationary frame are shown in Wheeler patent, No. 575,918, of 1897, and in other patents above enumerated.

A fair construction of the two Ball patents, the Herman patent, No. 426,271, of 1890, the Pihlfeldt patent, No. 327,408, pertaining to velocipedes, the Lake British patent of 1891, Wheeler patent, No. 575,918, of 1897, relating to a brush-holding device, makes it plain that there is little novelty in the locking or guiding feature of the raceway and balls as an independent element. Nor is there novelty in the large rotatable ring, if that may be said to be a feature of claim 6. It is found in the Wheeler patent, No. 575,918, above cited. The means of the Bliss patent for gaining access to the brush mechanism is one not involving in itself any invention. So, as above stated, the novelty must be found, if it exists, in the combination of old elements. This may not be deduced from a more convenient arrangement than that of the prior art, but in a new result—the outcome of a new conception as applied to the brush mechanism art.

To cease to use the bearing-sleeve as an element of the brush-carrier necessitated the addition of a new brush-carrier bearing—an additional element. Were the nonrotatable sleeve or hub of the prior Bliss patent enlarged to the dimensions assumed to called for by the patent in suit, thereby necessitating a large rotatable ring to co-operate with it, that would scarcely be ground upon which to predicate invention. Nor would the interposition of an anti-friction device tend to create patentable novelty. The substitution of two bearings for one would, of itself, not amount to invention. In the patent in suit, the inner ring is rotatable. In the prior Bliss patent, it is the outer ring which rotates. That modification is not patentable. The claim in suit makes no mention of the relative location of the two rings with regard to which is rotary and which stationary. Nor does it call for rings of any particular size. While this is true, yet there is shown substantial advancement upon the prior art in the arrangement of the parts, largely due to mechanical skill, but possessing a

191 F.—54

degree of novelty, which, in an art. no subtle as that here involved, should be recognized as patentable, but so limited as to protect only the particular device of the patent. With this qualification, the claim sued on is held to be valid.

Defendant's brush-holder is carried by a rotary yoke mounted upon a bearing formed integrally on the main end-bearing casting. This, defendant insists, is exactly like the bearing which complainant's expert Miller depicts in the drawing, "Miller sketch of brush-shifting mechanism of the prior art." It cannot be removed as a unit. The whole end plate must first be removed. This carries the brush carrier, which must therefore not be a part of a unitary body. In defendant's device the brush mechanism is not removed functionally from the sleeve or hub which carries the generator axle, and is not independent thereof. Defendant's structure seems to resemble somewhat the devices of the Ball and Lake patents in the matter of bearings. This feature alone would relieve it from a charge of infringement of the claim in suit as above limited. There are other differences, such as the absence of a removable bottom plate and stop. The complainant fails to show infringement. The bill is therefore dismissed for want of equity.